UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL POWERS                                                                    Plaintiff

v.                                                                Civil Action No. 3:23-cv-00609-RGJ

AUTOZONERS, LLC                                                                  Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant AutoZoners, LLC ("AutoZone") moves for summary judgment. [DE 32]. Plaintiff Michael Powers ("Powers") responded [DE 34] and AutoZone replied [DE 37]. These matters are ripe. For the reasons below, AutoZone's Motion for Summary Judgment [DE 32] is **DENIED**.

## I.        BACKGROUND

AutoZone hired Powers as a District Manager in 2005. [DE 32-1 at 171]. A District Manager oversees twelve to fifteen stores and reports to the Regional Manager. [*Id*.]. The Regional Manager reports to a Divisional Vice President. [*Id*.]. Powers was a District Manager in the Cincinnati Region and reported to Regional Manager Marlon Fleming ("Fleming") for most of his tenure [*Id*]. In November of 2021, Fleming relocated to Louisville to serve as the Regional Manager of the Louisville Region. [DE 32-4 at 263; *Id*.]. About a month and a half after Fleming relocated, Powers reached out and expressed a desire to join him in the Louisville Region. [DE 32-4 at 263; DE 34-12 at 576.]. Powers's request was granted, and he assumed a District Manager position on the east side of the Louisville Region. [*Id*.].

In November 2022, less than a year after Powers started in Louisville, Roderick Percival ("Percival") took over as the Regional Manager of the Louisville Region. [DE 35-5 at 812]. During

Powers's time with AutoZone, both Fleming and Percival reported to Joshua Hughes ("Hughes"), the Divisional Vice President of both Cincinnati and Louisville. [DE 32-2 at 205]. In April 2023, Hughes visited the Louisville Region and met with Powers. [DE 32-1 at 172]. During that conversation Powers made comments that upset Hughes. Hughes then stated that, "you don't understand, I'm the guy that can end your 17-year career" and "the pandemic was resulting in a lot of people's early retirement." [DE 32-2 at 193].

Shortly thereafter Powers was investigated by Dawn Brandenburg ("Brandenburg") who discovered two alleged infractions committed by Powers. [DE 32-6 at 334]. According to AutoZone, Powers terminated Mike Crawford ("Crawford") a store manager without cause or authority and made inappropriate and homophobic comments to Patrick Peterson ("Peterson"). a subordinate of Powers. [*Id*.]. After Brandenburg concluded her investigation, she reported her findings to Ted Pichler ("Pichler"), the Divisional Human Resource Manager, who recommended to Percival that Powers be demoted to store manager. [De 32-6 at 334]. AutoZone designated Powers a manager in training while looking for a store manager position closer to his home. [DE 32-1 at 177]. The new position would have included a pay decrease of $36,000. [*Id*.].

Powers refused to demotion and requested severance if AutoZone tried to fire him. [DE 32-2 at 197]. AutoZone informed Powers that he was not being fired, and if he did not show up for work at his new position he would have resigned and abandoned his position. [*Id*. at 216]. Powers did not show up and his position was terminated. [DE 32-3 at 246]. Powers had been an employee of AutoZone for thirty-eight years when he separated from AutoZone. [DE 34-360]. Powers was forty-six at the time of his hiring, [*id*.] and sixty-four years old at the time of his demotion. [DE 34 at 360]. For less than three months Powers was replaced by Percival who

temporarily managed the stores in Powers's district before a replacement was found. [DE 32-3 at 255]. Percival was fifty-one. [*Id*. at 257].

On October 30, 2023, Powers sued AutoZone in Jefferson County Circuit Court. Powers raised one count of age discrimination under Ken. Rev. Stat. 334.010. The case was removed to federal court in the Western District of Kentucky on November 20, 2023.

## II.    STANDARD

Under Federal Rule Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986*)*. The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party can meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (internal quotation marks omitted)). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### III.    ANALYSIS

"Because Kentucky's age discrimination statute 'is specially modeled after the Federal law,'" courts analyze claims brought under the KCRA (Kentucky Civil Rights Act) consistent with the federal Age Discrimination in Employment Act ("ADEA"). *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *Williams v. Tyco Elec. Corp.*, 161 Fed. App'x 526, 531 n. 3 (6th Cir. 2006)); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984). Under both statutes, employers "are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen*, 545 F.3d at 393; *see* 29 U.S.C. § 623; Ky. Rev. Stat. Ann. § 344.040(1).

A plaintiff "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Gibson v. AHF, LLC*, 495 F. Supp. 3d 499, 505 (E.D. Ky. 2020) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993)). A plaintiff can show this in two ways. First, through direct evidence, which "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen*, 545 F.3d at 394 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Second, though circumstantial evidence, which "does not on its face establish discriminatory animus but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

Both the ADEA and KCRA prohibit an employer from "discriminating against an employee over the age of forty because of the employee's age." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015). A disparate treatment claim under both statutes is evaluated using the *McDonnell Douglas* "burden-shifting framework" *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 619 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of age discrimination, the plaintiff must show that:

> (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals.

*Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (citing *Id*. at 462)*; see also Williams v. Wal-Mart Stores, Inc.,* 184 S.W.3d 492, 496 (Ky. 2005)*.* Because the *McDonnell Douglas* framework applies to disparate treatment claims for multiple types of discrimination, courts often look to how the framework is applied in one context to determine its application in another. *See, e.g., Waggoner v. Carlex Glass Am*., *LLC*, 682 F. App'x 412, 415 (6th Cir. 2017)

5

(citing *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006), which dealt with sex discrimination, to resolve an ADA claim); *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932, 945 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018) (citing *Key v. Cincinnati Hamilton Cnty. Cmty. Action Agency*, No. 1:09-CV-139, 2011 WL 4543892, at *10 (S.D. Ohio June 28, 2011), *report and recommendation adopted*, No. 1:09-CV-139, 2011 WL 4543834 (S.D. Ohio Sept. 29, 2011), which dealt with race and age discrimination, to resolve an ADA claim).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 580 (6th Cir. 2022) (cleaned up). "Discriminatory remarks, however, are direct evidence of discrimination only when they come from a supervisor with at least a meaningful role in the decision-making process." *Id*. at 581 (internal quotation marks and citation omitted). When "multiple persons with various degrees of influence participated in the ultimate decision," a supervisor's statements alone "do not compel a discrimination finding" because "a jury would have to take inferential steps to determine the scope of [the supervisor's] role in that decision." *Id*.; *see* W*eigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 382 (6th Cir. 2002) ("It is well established that isolated and ambiguous comments are not sufficient to make out a direct-evidence case of employment discrimination."). Under the ADEA and KCRA, plaintiffs must show "that age is the 'but-for' cause of the disciplinary action," as such there are no mixed motive claims. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 896 (6th Cir. 2024).

### A.  Direct Evidence of Discrimination

Powers alleges that statements made several months before his firing provide direct evidence of discrimination sufficient to forego the *McDonnell Douglas* framework and apply the

standard under a direct evidence discrimination claim. [DE 30 at 340]. According to Powers, Josh Hughes's statement that "I'm the guy that can-end your 17-year career," as well as a vague reference to "early retirement" and the "pandemic" both provide direct evidence of age discrimination. [DE 34 at 369; DE 34-12 at 561].

The first contested statement made by Hughes, "I'm the guy that can-end your 17-year career," only addresses tenure or years of service. Both the Sixth Circuit and Supreme Court have ruled that "age and years of service are 'analytically distinct,' a decision based on years of service is 'not necessarily age-based.'" *Rowan v. Lockheed Martin Energy Sys., Inc*., 360 F.3d 544, 548 (6th Cir. 2004) (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)). Although the length of an employee's tenure may "correlate empirically with age," the two are not synonymous and "an employee's age is analytically distinct from his years of service." *See Scott v. Potter,* 182 F. App'x 521, 526 (6th Cir. 2006). Years of service cannot be used as a proxy for age in finding liability pursuant to Title VII and the ADEA. *Hinton v. Trinity Highway Prods., LLC*, No. 4:12-CV-1063, 2013 WL 1910412, at *6 (N.D. Ohio May 8, 2013), *aff'd* (June 30, 2014). Powers himself acknowledges that this statement is an "explicit reference to the Plaintiff's tenure and years of service," which does not qualify as direct evidence of age discrimination under the ADEA or KCRA. [DE 34 at 369]. The vague reference Hughes makes to early retirement also fail as direct evidence. The Sixth Circuit has held that "comments concerning retirement made by employers to their workers nearing 60 years of age does not constitute direct evidence of age discrimination." *Gibson v. AHF, LLC*, 495 F. Supp. 3d 499, 505 (E.D. Ky. 2020) (citing *Williams*, 161 F. App'x at 534). Even a more direct statement about Powers retiring early is insufficient to serve as direct evidence of discrimination.

"Only the most blatant remarks, whose intent could be nothing other than to discriminate" satisfy direct evidence. *Sharp v. Aker Plant Servs. Grp., Inc.,* 726 F.3d 789, 798 (6th Cir. 2013). Hughes's remark about Powers's tenure while threatening, do not satisfy the standard of direct evidence as none show discrimination based on age without making significant inferences. Further, a mere reference to retirement, even when more direct than what the record indicates in this case, fails to provide direct evidence of discrimination. The Court must proceed under the *McDonnell Douglas* framework and any arguments of direct evidence fail.

### B.  *McDonnell Douglas* Test – Circumstantial Evidence of Discrimination

Powers alleges that AutoZone fired him due to his age and replaced him with someone "significantly younger," discriminating against him for his age under Ky. Rev. Stat. 344.010. [DE 1-2 at 13].  AutoZone makes two arguments in support of summary judgment. First, AutoZone argues that Powers cannot make a prima facie case of age discrimination. AutoZone asserts that Powers does not meet the third element of a prima facie case as he is unqualified for the position, or the fourth element because his firing was not age related and he was not replaced by a someone substantially younger.  Second, AutoZone argues that even if the prima facie case is met, it has a legitimate nondiscriminatory reason for demoting Powers given his inappropriate comments, failure to report policy violations, and unauthorized termination of Crawford. AutoZone claims there is no evidence this is mere pretext for discrimination. Several elements of the prima facie case are not challenged and this Court need not address these uncontested elements.

### 1.  Prima Facie Case

#### i.  *Adverse Employment Action*

AutoZone only contests Powers's claim that he was constructively discharged and does not argue that a demotion is not an adverse employment action. [DE 32-1 at 183]. Although Powers

initially argued that he was fired or constructively discharged, he does not argue this point in his response to AutoZone's motion for summary judgment and makes clear throughout he only challenges his demotion. [DE 34 at 378]. In the Sixth Circuit a plaintiff is deemed to have abandoned a claim when they fail to address it in response to a motion for summary judgment. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys., Inc*., 65 F. App'x 19, 24–25 (6th Cir. 2003). Since Powers does not address the summary judgment arguments raised regarding claims of actual or constructive firing and has made clear he no longer intends to bring these claims forward, the Court considers them abandoned at summary judgment and will not address them further.  The Court will consider the discrimination claim raised regarding Powers's demotion.

### ii.    Lack of Qualifications

AutoZone argues that Powers fails to make a prima facie case of discrimination because he did not meet AutoZone's legitimate workplace expectations and was not qualified for his position*. Murphy v. Univ. of Cincinnati*, 72 F. App'x 288, 293 (6th Cir. 2003). According to AutoZone, Powers was counseled by Percival regarding his employment in 2023, and numerous employees complained about how Powers treated them. [DE 32-1 at 181]. However, both arguments are raised by AutoZone to prove that Powers was demoted for a legitimate nondiscriminatory purpose. [*Id* at 185].  Such an argument, however, "improperly conflat[es] the distinct stages of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d

651, 661 (6th Cir. 2000). "[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the *prima facie* stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Id.* at 660-61. Under *McDonnell Douglas,* Defendants have an "opportunity to identify a just motivation for terminating Plaintiff's employment, but it may not do so at the prima facie stage." *Stewart v. Steward Trumbull Mem'l Hosp., Inc*., 395 F. Supp. 3d 907, 914 (N.D. Ohio 2019). "Rather ... [courts] look instead at whether an employee met her employer's legitimate expectations prior to the event(s) that sparked the termination, even if the event is as seemingly objective as ... violating clear rules." *Catholic Diocese of Toledo*, 206 F.3d at 666. The arguments AutoZone makes to show a nondiscriminatory reason for firing Powers cannot be used to combat the prima facie case.

Further, Powers presents the Court with sufficient evidence that he met AutoZone's legitimate expectations for his position as district manager, satisfying the Court that there is a material dispute of fact regarding his qualifications. First, Powers provides records from his thirty-eight years working for AutoZone, in which he was only disciplined for minor infractions twice and was consistently found to meet or exceed expectations in his reviews. [DE 34-1 at 375; DE 34-4]. More importantly, in his most recent performance evaluation from 2023, Powers's superior Fleming rated Powers as "Expectations consistently met" and awarded him a 4.5% merit increase to his salary. [DE 34-3 at 386]. Other recent performance reports near the end of Powers's employment ranked him as the second-best district manager in his region, and 220 out of 480 district managers overall, in the top half of performers at his position. [DE 35-4 at 792-94]. Second, Powers uses the testimony of Fleming, his direct superior for five years in Cincinnati and one year in Louisville, to provide evidence that he was qualified for his position as regional manager. In his

deposition Fleming noted that both himself and Hughes were excited for Powers to transfer to Louisville where they believed his help was needed. [*Id*. at 11]. Fleming stated that Powers "was a hard worker" and repeatedly said that he "did a great job." [*Id*. at 787]. According to Fleming, Powers's quality of work continued in Louisville and his performance made him qualified for his role, confirmed by AutoZone's own evaluation metrics. [*Id*. at 790]. This evidence on the record is sufficient to show a material dispute of fact as to whether Powers met the legitimate expectations of AutoZone. The question of Powers's qualifications is best left to a trier of fact and survives summary judgment.

### iii.     *Powers's Replacement*

AutoZone argues that Powers fails to make a prima facie case of discrimination because AutoZone did not replace him with a significantly younger individual. [DE 32-1 at 182-83]. According to AutoZone, although Powers was eventually replaced by a substantially younger employee, Percival, a fifty-one-year-old regional manager took over the position for two to three months first while interviews were conducted. [DE 32-3 at 255]. AutoZone argues that because Percival was not substantially younger than Powers when he took over Powers's old position there was no age discrimination. [*Id*.].

It is well settled in the Sixth Circuit that "an employee's assumption of a terminated co-worker's job duties does not constitute replacement for purposes of an ADEA claim." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283–84 (6th Cir. 2012) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) ("A person is not replaced when ... the work is redistributed among other existing employees already performing related work.")). Rather, a "'person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Grosjean,* 349 F.3d at 336.

Additionally, even if this Court held that Percival was Powers's replacement AutoZone's argument fails. There are well established ranges in the Sixth Circuit for determining whether an age difference is significant for discrimination purposes. In the absence of direct evidence that the employer considered age to be significant, "an age difference of six years or less between an employee and a replacement is not significant." *Scola v. Publix Super Markets, Inc.,* 902 F. Supp. 2d 1083, 1092 (E.D. Tenn. 2012), *aff'd in part sub nom. Scola v. Publix Supermarkets, Inc.,* 557 F. App'x 458 (6th Cir. 2014) (citing *Grosjean*, 349 F.3d at 340). On the other hand, "an age difference of ten or more years is generally considered significant." *Blizzard*, 698 F.3d at 284. Anything that falls between six to ten years must be considered on a case-by-case basis. *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 467 (6th Cir. 2014). A substantially younger replacement is sufficient to establish age discrimination even if the replacement themselves is over forty. *Barnes v. GenCorp Inc*., 896 F.2d 1457, 1466 (6th Cir. 1990) ("an employer violates ADEA when preference is given to a younger employee even if the younger employee is within the protected class of persons age 40-and-over"). Powers was sixty-four years old at the time of his demotion. [DE 34 at 360]. Percival was fifty-one. [DE 32-3 at 257]. The thirteen-year age difference between the two is considered significant within the Sixth Circuit and Powers's prima facie case succeeds on this point regardless of who replaced Powers.

## 2. Non-Discriminatory Justification

Since Powers has established a prima facie case of discrimination of discrimination, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for failing to promote the plaintiff to the position sought." *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 814 (6th Cir. 2011). To satisfy this burden, AutoZone need only "raise a genuine issue of fact as to whether it discriminated against." *See Id*. at 814-15. To do this, AutoZone "must clearly set

forth, through the introduction of admissible evidence" the reason for Powers demotion. *Reed v. Am. Cellular, Inc.*, 39 F. Supp. 3d 951, 965 (M.D. Tenn. 2014) (citing *Provenzano*, 663 F.3d at 815).

AutoZone contends that inappropriate remarks made by Powers, as well as his unauthorized firing of Crawford, a subordinate store manager, constitute legitimate nondiscriminatory reasons for demoting Powers. [DE 32-1 at 185]. AutoZone provides the deposition testimony of several employees as evidence of Powers's actions. Percival testifies that Powers did not have the authority to terminate Crawford but did so anyway [DE 32-3 at 253], and both Crawford and Powers confirm the termination. [DE 32-5 at 323; DE 32-2 at 330; DE 32-7 at 347]. AutoZone also provides proof that Powers made comments about Adam Lambert "[t]he gay guy" in front of employees, including Powers's own email admission. [DE 32-5 at 299, 322]. The Sixth Circuit has found both insubordination and unprofessional behavior to be sufficient nondiscriminatory justification for an adverse employment action. *Yazdian v. ConMed Endoscopic Tech., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015). Making inappropriate remarks to subordinate employees qualifies as unprofessional behavior, as does firing a subordinate employee without permission and authority to do so. The Court finds that AutoZone has presented legitimate nondiscriminatory reasons for demoting Powers.

### 3.  Pretext

After the defendant has provided a legitimate nondiscriminatory reason for an adverse employment action, a plaintiff must establish that the employer's stated reason for the adverse employment action is pretextual under the third step of the *McDonnell Douglas* framework. *Blizzard*, 698 F.3d at 285. A plaintiff can demonstrate pretext by showing that an employer's stated reasons for an adverse employment action (1) have no basis in fact, (2) did not actually motivate

the action, or (3) were insufficient to warrant the action. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). The three categories are not meant to be applied rigidly, but all serve the purpose of "marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citation omitted). The plaintiff has the burden of producing sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the actual reason for termination was his age. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 895 (6th Cir. 2024). When addressing pretext at summary judgment, the court must ask "whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) "'[T]o survive summary judgment a plaintiff need only produce enough evidence ... to rebut, but not to disprove, the defendant's proffered rationale.'" *Carter v. Toyota Tsusho Am., Inc*., 529 Fed. App'x 601, 609 (6th Cir. 2013) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)).

### i.    No Basis in Fact

According to Powers the justifications offered for his firing are pretext because there is no basis in fact for either his firing of Crawford, or the complaints made against him for homophobic remarks. First, Powers argues that there is no basis in fact that he fired Crawford without authorization because Crawford told Powers that he would be resigning after his vacation. This argument fails because AutoZone has provided clear basis on the record, including comments from Crawford himself, that Crawford had not resigned at the time Powers terminated him. [DE 32-7 at 345]. According to Crawford, Powers was told Crawford was thinking about retirement and would let Powers know his decision after the vacation and was shocked to find he was fired while he was gone. [*Id*. at 345-47]. Even if Powers presents testimony that Powers believed Crawford had

already resigned, AutoZone had a sufficient factual basis for its justification, and Powers himself admits that he terminated Crawford in the system, even if he denies that he technically terminated his employment. [DE 32-3 at 25].

Second, Powers argues there is no factual basis for the claim that he made inappropriate remarks to a subordinate employee as the employee who reported him states that he was coerced, and the report was made up. [DE 34 at 378]. Powers provides the testimony of Peterson, the employee who supposedly reported him, who states that Powers had not mistreated him, and that he had told AutoZone as much when HR spoke with him. [DE 34-4 at 419]. Peterson states that Brandenburg reached out to him first and typed out a statement for Peterson alleging that Powers mistreated him, and "got [Peterson] to sign it even though it was untrue." [*Id*.]. AutoZone counters that Percival demoted Powers based on a good faith belief that misconduct had occurred. AutoZone argues that Peterson never denies that Powers said "[w]hat are you like that gay American Idol singer, Adam Lambert?" [DE 32-5 at 291]. Further, AutoZone argues that the testimony of Crawford, as well as Powers's own emails help corroborate the allegation that Powers made homophobic remarks. [*Id*. at 306; DE 32-5 at 322; 32-7 at 349]. Crawford further testifies that he informed Brandenburg about Powers's remarks over text and was standing right beside Powers when the remarks were made. [DE 32-5 at 349-50].

AutoZone has provided sufficient evidence from the record to provide a basis in fact for both justifications provided for Powers's demotion, and Powers does not provide sufficient evidence to establish a material dispute of fact regarding whether these statements were made. However, the Court examines all of the arguments for pretext together, and the issues Powers points to in the factual basis for his demotion could help a reasonable juror question AutoZone's actual motivation. If a jury believed that Crawford had informed Powers that he was quitting before

15

he was removed from the system, it would call into question AutoZone's basis and motivation for punishing Powers. The same goes for Peterson's statements that he was forced to sign an untrue statement that he was mistreated by Powers, which the Court addresses in more detail below. *See infra* at 18. Even though Powers's arguments fail to establish that there was no factual basis for AutoZone's offered justification for Powers's demotion, they do provide evidence of pretext as to AutoZone's actual motivation.

ii.       *Unjustified Punishment*

Powers argues that AutoZone's offered explanation for his demotion did not justify a demotion and pay cut. First, Powers argues that if he had made discriminatory or homophobic remarks his punishment should have been more severe due to AutoZone's zero tolerance policy. [DE 34 at 380]. Although Powers argues that this shows his actions were insufficient to warrant AutoZone's punishment, it actually implicates the true motivations of AutoZone and will be analyzed by the Court as such in the section below. Second, Powers argues that a demotion was too harsh a punishment for his termination of Crawford within the system because he had engaged in this behavior many times during his career with AutoZone. But, Powers offers no facts to establish that AutoZone was aware of Powers's previous actions and fails to address the core issue raised by AutoZone, which was that AutoZone provides significant evidence that Crawford had not resigned, and that Powers incorrectly terminated an active employee. It is well settled that to establish pretext, a "plaintiff must allege more than a dispute over the facts upon which [the adverse employment action] was based. [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co*., 258 F.3d 488, 493–94 (6th Cir. 2001). Powers does not cite to any facts on the record to provide supporting evidence to show that AutoZone did

not honestly believe in its offered justification. Powers also does not offer evidence that these penalties were out of line with AutoZone's norms or policy, instead merely offering his own opinion on whether he believes the punishment was just.

### iii. *Actual Motivation*

Powers argues that his termination was mere pretext as AutoZone's proffered justifications did not actually motivate AutoZone to demote Powers. This argument requires a demonstration that the discriminatory basis for termination is more likely than the proffered reason, based on the "sheer weight of the circumstantial evidence of discrimination." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 787, 791 (6th Cir. 2006). According to Powers, statements made by Hughes as well as sworn affidavits of former AutoZone employees reveal age animus in AutoZone's decision to demote Powers. Further, Powers argues that shifting justifications for his demotion, as well as punishment inconsistent with AutoZone's policies, call into question its claimed justification.

The primary evidence Powers provides to establish that age animus motivated AutoZone's decision to demote him are statements made by Hughes regarding retirement and the length of Powers's career. AutoZone argues that even if Hughes's statements did show animus the comments cannot be considered for pretext as Percival was the final decision maker, not Hughes. [DE 34-12 at 570]. In the Sixth Circuit the comments of an "individual who had no input into hiring and firing decisions" does nothing to inform the Courts "inquiry into when or why the actual decision-maker fired an employee." *See Roberts v. Principi*, 283 Fed. App'x 325, 332 (6th Cir. 2008). But discriminatory remarks made by "a person in a position to influence the alleged employment decision," and that are not "so isolated or ambiguous as to be nonprobative," can serve as evidence of pretext. *Diebel v. L & H Res. LLC*, 492 F. App'x 523, 532–33 (6th Cir. 2012)

17

(quoting *Clack v. Rock-Tenn Co*., 304 F. App'x 399, 405 (6th Cir. 2008)). Hughes is the Divisional Vice President of Powers's region and as such is Percival's direct superior. [DE 32-2 at 205]. This would certainly give him the power and authority to influence Percival's decision to demote Powers. [*Id*]. Powers testified in his deposition that Percival told him that Percival had "been instructed by the divisional office" to demote Powers. [DE 34-12 at 569]. As the Divisional Vice President Hughes is the head of the "divisional office," and a reasonable juror could infer the decision to demote Powers was at minimum influenced by Hughes. [DE 32-2 at 205]. As such, any remarks made by Hughes can provide evidence of pretext.

Hughes made two comments during a tense discussion that Powers contends establish age animus and pretext. Powers asserts that Hughes threatened him by saying, "you don't understand, I'm the guy that can end your 17-year career" and "the pandemic was resulting in a lot of people's early retirement." [DE 32-1 at 172; DE 32-2 at 193]. References to retirement and tenure alone are insufficient to establish direct evidence, *Rowan*, 360 F.3d at 548; *Gibson*, 495 F. Supp. 3d at 505, but such statements are part of the totality of the circumstances this Court must consider when determining pretext. *Braverman v. Penobscot Shoe Co*., 859 F. Supp. 596, 601 (D. Me. 1994), a*brogated by Quiron v. L.N. Violette Co. Inc*., 897 F. Supp. 18 (D. Me. 1995). While each statement alone would be insufficient to support pretext for age discrimination, taken together in the context of Powers's subsequent investigation and replacement with a significantly younger worker, these statements can serve as evidence calling into question AutoZone's actual motivation in demoting Powers.

Powers further claims the testimony of Sarah Jeffrey ("Jeffrey") and Peterson establish ulterior motives for Powers's firing. In an affidavit Jeffrey states that Powers was set up to fail and many workers knew he would be fired before he was, and that she believed it "was all planned

out." [DE 34-8 at 490-91]. Jeffrey's testimony is of minimal support as it provides little factual basis for the belief that Powers was plotted against outside of an unnamed trucker who delivered parts saying, "something like 'yeah, but Mike isn't here any more.'" [*Id*. at 491]. However, Peterson's affidavit establishes facts that help refute AutoZone's claim that Powers was fired for his treatment of Peterson. [DE 34-4 at 418]. Peterson states that Powers never mistreated him, and that he liked Powers. [*Id*.]. Peterson further avers that he informed Brandenburg and HR that he had not been mistreated, and that it was Brandenburg who reached out to him initially and made him sign an untrue affidavit. [*Id*]. A reasonable juror could find that these statements call into question AutoZone's real motivations for demoting Powers, especially given the proximity in time between Hughes's comments and the investigation of Powers that uncovered Powers's alleged misconduct.

Additionally, Powers contends that Percival did not mention the incident with Crawford as justification for Powers demotion when the two spoke. [DE 34 at 380]. Under the ADEA an employer's "shifting rationales for terminating an employee can serve as evidence that its stated rationale is pretextual." *See Cicero v. Borg-Warner Auto., Inc*., 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question."). Even though Percival referenced Crawford's termination as the justification for Powers demotion in his deposition, [DE 32-3 at 238] AutoZone does not dispute Powers's contention that this was not the justification given to Powers at the time of his demotion. [DE 37 at 863]. A reasonable juror could find that AutoZone's rational had shifted from the time of Powers's demotion to the start of the litigation. "The extent to which such shifting justifications are probative of pretext depends upon the circumstances of a given case" and the magnitude of the inconsistency. *Aldridge v. City of Memphis*, 404 F. App'x 29, 38–39 (6th Cir. 2010) (quoting *Eades v. Brookdale Senior Living, Inc*.,

401 Fed. App'x 8, 13 (6th Cir. 2010)). AutoZone's omission of what was supposedly a crucial overstep of Powers's authority is notable, especially considering Powers's testimony that this behavior was common and unpunished. [DE 34-12 at 593]. Powers has presented sufficient facts to allow a reasonable juror to find AutoZone's shifting justifications call into question it's true motives in demoting Powers.

Finally, Powers argues that if he had made discriminatory or homophobic remarks to Peterson, his punishment should have been more severe due to AutoZone's zero tolerance policy. [DE 34 at 380]. While it is true that AutoZone has a zero-tolerance policy for discrimination, the policy does not specify what punishment AutoZone employees face when engaging in behavior that violates the zero-tolerance policies. [DE 34-9 at 498]. In fact, all the punishments mentioned in the AutoZone store handbook list potential punishments as "up to and including" termination. [*Id*. at 505]. There is nothing on the record that indicates AutoZone was more lenient with Powers than the store handbook would indicate, and as such this argument does establish a material dispute of fact as to AutoZone's actual justification in demoting Powers.

At this stage Powers is not required to *prove* that AutoZone's justifications are pretextual. *Carter,* 529 Fed. App'x at 609. When viewed in the light most favorable to Powers, there is sufficient evidence for a reasonable juror to infer that AutoZone's proffered nondiscriminatory justifications did not actually motivate AutoZone's decision to demote Powers. Powers can point to several inconsistencies in AutoZone's actions as well as evidence of potential animus sufficient for a reasonable juror to find pretext for age discrimination. Powers has established a genuine dispute of material fact that age discrimination was the "but-for" cause of AutoZone's decision to demote him, and the Court will **DENY** AutoZone's motion for summary judgment on this claim.

## IV.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that AutoZone's Motion for Summary Judgment [DE 32] is **DENIED**.


Rebecca Grady Jennings, District Judge
United States District Court

May 16, 2025