UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL POWERS                                                                                    Plaintiff

v.                                                                         Civil Action No. 3:23-cv-00609-RGJ

AUTOZONERS, LLC                                                                                Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Michael Powers ("Powers") moves the Court [DE 111] once again to reconsider its May 19, 2025, Memorandum Opinion and Order denying summary judgment. [DE 38]. This motion was filed on the eve of trial and as such a written response was not tendered by AutoZone. The Court heard arguments from both parties and allowed AutoZone to respond on the record on August 25, 2025. For the reasons below, Powers's Second Motion to Reconsider [DE 111] is **DENIED**.

**I.      BACKGROUND**

The full facts and background are in the Court's summary judgment order. [DE 38]. On December 20, 2024, AutoZone moved for summary judgment on all counts. Powers responded [DE 34] and AutoZone replied. [DE 37]. The Court issued a Memorandum Opinion and Order on May 19, 2025, denying AutoZone's motion for summary judgment with respect to Plaintiff's claim that he was demoted due to age in violation of the Kentucky Civil Rights Act ("KCRA"). [DE 38]. In that order the Court dismissed Powers's claim for actual termination and constructive discharge, holding that Powers had abandoned his claim of constructive discharge. [*Id.*]. Powers then moved the Court to alter or amend its ruling to preserve his claims of constructive discharge and actual termination [DE 39], which the Court denied. [DE 76]. On

1

August 24, 2025, the day before trial, Powers moves for a second time to reconsider the Court's May 19, 2025, Memorandum Opinion and Order under Federal Rule of Civil Procedure 54(b), 59(e), and 60(b) [DE 111]. Powers asks the Court to reconsider its ruling that Powers had abandoned his claim of constructive discharge based on a clear error of law and newly discovered evidence.

## II.    ANALYSIS

### 1. Standard

Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," Federal Rule of Civil Procedure 54(b), provides that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Courts have "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47–48 (1943)). Further, "district court[s] may modify, or even rescind, such interlocutory orders" for sufficient cause. *Id.* (citing *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922)); *see also Lellanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 Fed. App'x 942, 946 (6th Cir. 2004).

Whether a motion is made under Rule 59(e) or 54(b), reconsideration is disfavored. *Cooper v. Vinson,* No. 5:17-CV-10-TBR, 2021 WL 1176263, at *3 (W.D. Ky. Mar. 26, 2021). The Court will reconsider an interlocutory order only if: (1) there is an intervening change in controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Johnson v. United States*, No. 3:15-CV-715-DJH-CHL, 2019 WL 236720, at

2

\*2 (W.D. Ky. Jan. 16, 2019), *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Rule 54(b) motion may not "serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought." *Madden v. City of Chattanooga*, No. 1:08-cv-160, 2010 WL 670107, at \*2 (E.D. Tenn. Feb. 19, 2010). "A motion for reconsideration that merely presents the same issues ruled upon by the Court, either expressly or by reasonable implication, shall be denied." *Savage v. United States*, 102 Fed. App'x 20, 23 (6th Cir. 2004) (internal quotation omitted). "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Adkins v. Kroger Ltd. P'ship*, No. 5:18-156, 2018 WL 6613786, at \*3 (E.D. Ky. Dec. 18, 2018) (quoting *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012)).

Powers also moves to reconsider under Rule 59(e) and Rule 60(b)(6). Although the motions are similar and their analysis overlaps, these are different actions with distinct requirements. Rule 59(e) requires that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). As Powers's is not moving to reconsider a judgment, and moves beyond the twenty-eight day deadline, the motion fails as to Fed. R. Civ. P. 59(e). Similarly, a motion to reconsider under Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(b)(c)(1). Powers's brings this motion to the Court on August 24, 2025, the night before trial, and more than three months after the Court's May 19, 2025, ruling on summary judgment. [DE 38]. Further, this is Powers's second motion to reconsider. This motion is untimely, and this motion fails as to Fed. R. Civ. P. 60(b)(6). The Court will proceed on Powers's arguments under Fed. R. Civ. P. 54(b).

### 2. Alleged Error of Law: Constructive Discharge

Powers argues that the Court made a clear error of law when it held that "constructive discharge is a separate claim from wrongful termination" and dismissed his constructive discharge claim as abandoned. [DE 111 at 2208]. According to Powers, both Kentucky law, and Sixth Circuit precedent hold that constructive discharge is not a standalone claim, and that by arguing he was terminated, Powers did not abandon his claim of constructive discharge. [*Id*.]. Powers argues this is clear error and grounds for reconsideration.

In its prior ruling on summary judgment [DE 39] this Court never held that constructive discharge was a standalone claim, merely that it was distinct from a wrongful termination claim based on actual termination. In *Pennsylvania State Police v. Suders*, the Supreme Court held that a claim for constructive discharge is an independent and tangible employment action under Title VII. 542 U.S. 129, 124 (2004). Since the ruling in *Suders*, numerous district courts within the Sixth Circuit have relied on this decision and analyzed constructive discharge claims independent of other related discrimination charges. *See Martin v. Challenge Mfg. Co*., No. 1:08-CV-1195, 2010 WL 1032660, at *4 (W.D. Mich. Mar. 17, 2010). Accordingly, a claim of constructive discharge has two basic elements apart from the requirements of a general discrimination claim, "a plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and that he actually resigned. *Green v. Brennan*, 578 U.S. 547, 555 (2016).

Regarding the relationship between constructive discharge and claims of actual termination, courts have explicitly held that "while a constructive discharge and a termination both result in the same injury – loss of employment – they are not the same thing." *Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 536 (S.D. Ohio 2020). A constructive

4

discharge occurs if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates v. Avco Corp.*, 819 F.2d 630, 636–37 (6th Cir. 1987) (citing *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir. 1982)). In a constructive discharge claim, it "is the employee who acts under this compulsion to end the employment through resignation or retirement." *Yerkes*, 455 F. Supp. 3d at 536. "A constructive discharge is not the employer's overt action of firing the employee, rather it is the individual personnel's conduct attributable to the employer that resulted in working conditions that were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Id*.

This is entirely consistent with rulings in this district that hold constructive discharge is not a standalone claim. *Marrero-Perez v. Yanfeng US Auto. Interior Sys. II LLC*, No. 3:21-CV-645-RGJ, 2022 WL 4368165, at *5 (W.D. Ky. Sept. 21, 2022) ("Constructive discharge, even if shown, does not support an independent cause of action.") (citing *Sullivan v. Paycor, Inc*., No. 3:13-CV-00028-H, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013)). Instead, "[a] constructive discharge may constitute an adverse employment action, which can be an element of a claim under the KCRA." *Id*. (citing *Brooks v. Lexington–Fayette Urb. Cnty. Hous. Auth*., 132 S.W.3d 790, 807 (Ky. 2004)). Constructive discharge is a distinct type of discrimination claim under the Kentucky Civil Rights Act ("KCRA") different from actual termination, demotion, and other adverse actions

Powers's argument that a constructive discharge claim is legally inseparable from that of actual termination relies on *Wilson v. Dana Corp*., 210 F. Supp. 2d 867, 888 (W.D. Ky. 2002). However, Powers largely misinterprets that court's ruling. *Dana Corp*. holds that "[c]onstructive discharge from employment is not itself a cause of action. First there must be an underlying

action for employment discrimination." *Id*. This holding does not support Powers's contention that a constructive discharge claim is identical to or inseparable from a claim for actual termination. Rather, it holds, as this court has already discussed, that there can be no constructive discharge without an underlying act of discrimination. *Id*. This is merely one of the elements required to find constructive discharge. *Id*. All *Dana Corp*. does is lay out the obvious, that element one of a constructive discharge claim cannot be satisfied without meeting the underlying prima facie case for discrimination. It does not support the contention that constructive discharge, and a legally and factually distinct claim based on actual termination, are the same claim.

Powers is unable to point to any caselaw that holds that a constructive discharge claim is inseparable from a claim of actual termination. More recent and relevant caselaw from the Supreme Court holds just the opposite, and the very nature of a constructive discharge claim demonstrates the flaws in this argument. As already explained, constructive discharge is a discrimination claim with its own elements distinct from that of a claim based on actual termination. *Green*, 578 U.S. at 555. Further, one of the elements of constructive discharge, that the plaintiff actually resigned, is not only distinct from, but is somewhat contradictory to a necessary element of a claim based on actual termination, that an individual was fired. Courts have repeatedly analyzed these two legal theories of discrimination separately and have held claims of constructive discharge abandoned while going on to analyze the distinct remaining claims of discrimination. *See Qixin Sun v. Dep't of Veterans Affs*., No. 2:17-CV-1039, 2019 WL 6682158, at *8 (S.D. Ohio Dec. 6, 2019). There is no clear error of law this Court must correct, and as such there is no basis for a motion to reconsider. Power's second Motion to Reconsider [DE 111] is **DENIED** based on this alleged error of law.

6

### 3. Abandonment of the Constructive Discharge Claim

Powers further argues that it was a clear error of law for the Court to find that Powers had abandoned his constructive discharge claim at summary judgement. [DE 111 2214]. The Court has already ruled on the issue of abandonment at summary judgement, [DE 38] and again on reconsideration. [DE 76]. Rule 54(b) may not be employed to relitigate issues or present evidence that could have been introduced earlier, and Powers's newest motion to reconsider attempts to provide new arguments on issues that the Court has twice ruled on, and where he has repeatedly failed to make these arguments prior. *Johnson*, 2019 WL 236720, at *2. Merely presenting the same issues previously ruled on by the Court is insufficient grounds for reconsideration. *Savage*, 102 F. App'x at 23 (internal quotation omitted). However, the Court will resolve these issues yet again to ensure that no issues remain into trial.

First, Powers cites to *Bennett v. Hurley Medical Center*. and argues that "a plaintiff does not forfeit a claim or theory simply by failing to present a detailed legal analysis of it, so long as the substance of the claim is presented in the record." 86 F.4th 314, 325 (6th Cir. 2023). However, this is a misreading of both the record and ruling in *Hurley*. In *Hurley* the plaintiff responded directly to the arguments made on summary judgment and "consistently framed her arguments using the prima facie case." *Id*. The Court in *Hurley* never states, or implies, that it is enough to merely have facts supporting the substance of a claim on the record without any actual argument. *Id*. Regardless, Powers's response is easily distinguishable from the holding in *Hurley*. *Id*. Here, as the Court has indicated in past rulings, Powers "wholly fail[ed] to make arguments supporting a claim" of constructive discharge. Not once in his response to summary judgement did Powers respond to AutoZone's arguments on constructive discharge, and Powers never framed his arguments using the prima facie case for a constructive discharge claim. In his

7

response, Powers failed to allege that he resigned at all, nor did he allege it in the alternative. *Qixin Sun*, 2019 WL 6682158, at *8 (finding a constructive discharge claim abandoned because the plaintiff did "not even mention the fact of his resignation" and "[failed] to address the claim at all."). As the Court has previously indicated "Powers fails to mention constructive discharge at any point in his response and fails to address AutoZone's arguments against constructive discharge." [DE 76 at 1513]. Powers has abandoned his claim of constructive discharge.

Powers also argues that he did not abandon his claim because he argued in his response that he had been "wrongfully terminated" which is a "catch all claim" that includes both actual termination and constructive discharge. [DE 111 at 2210]. This argument is unavailing for two reasons. First, as the Court has already discussed, actual termination and constructive discharge are two separate types of discrimination claims. And second, Powers's response to summary judgment did not argue a generic wrongful termination claim that could incorporate either actual or constructive discharge. Powers explicitly and firmly argued that he was terminated by AutoZone. In his response, Powers asserts that he "testified under oath he did not quit, but that he was terminated" and that "there is no genuine dispute that he was discharged." [DE 34 at 375]. When arguing discharge in his response, Powers never alleges that his working conditions had become intolerable while maintaining he did not quit. [DE 34 at 375]. Powers claims he did not ask the Court to go fishing through the record to support his claim, but that is exactly what he does. In fact, Powers goes further and asks the Court to ignore the statements in his own response where he denies the necessary elements of constructive discharge. Rather than arguing constructive discharge or contending that in the alternative the facts show that Powers was forced out, Powers firmly maintained that he did not quit, but was fired, rejecting an essential element

8

of constructive discharge. *Green,* 578 U.S. at 555 (constructive discharge claims require a plaintiff actually resign.).

It is not enough for Powers to finally respond to AutoZone's summary judgment arguments on constructive discharge the day before trial after failing to do so in both his response to summary judgment [DE 34] and motion to reconsider. [DE 39]. Powers abandoned his claim of constructive discharge and reconsideration is **DENIED**.

### 4. Newly Discovered Evidence

Powers also briefly argues that the Court should reconsider its summary judgment due to the newly discovered evidence provided by the Peterson deposition. [DE 111 at 2216]. Powers contends that in his affidavit Peterson admits to changing his testimony when recounting his interaction with Powers to Dawn Brandenburg during AutoZone's investigation. [*Id*. at 2215]. Powers argues that evidence of this shift in testimony is new and clear evidence of a "coordinated effort between Crawford, Brandenburg, Hughes, Peterson, and Percival to build a case against Powers."

In the Sixth Circuit newly discovered evidence can provide a basis for a motion to reconsider. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv*., 616 F.3d 612, 615 (6th Cir. 2010). Under related motions to reconsider, for evidence to be classified as "newly discovered," it must have been "previously unavailable," *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)), and a party must demonstrate that they "exercised due diligence in obtaining the information.*" JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co*., 750 F.3d 573, 584-85 (6th Cir. 2014).

This Court has already addressed the issues of Peterson's deposition and whether or not it constitutes newly discovered evidence which AutoZone raised in their motion to reconsider and

motion to supplement. [DE 86]. The Court notes that Powers objected to AutoZone's supplement requesting the Court consider Peterson's deposition as newly discovery evidence. [DE 59]. At that time the Court denied reconsideration on the basis of Peterson's deposition as newly discovered evidence and struck the deposition from the record. [DE 95].

Powers could have deposed Peterson at any point during discovery. AutoZone disclosed Peterson's report in their initial disclosures and used the report as a key part of their decision to demote Powers. [Final Pretrial Transcript, at 9]. If it is "without question that Patrick Peterson is one the most important witness in this case, if not the most important," why did neither party depose him until so late in the litigation process? Powers was aware of Peterson's importance as a witness early in the process as Peterson's report was part of the initial disclosures in this case. Even though the deposition itself was not taken until after the Court's summary judgment order, the information obtained from the deposition was not "previously unavailable" to Powers. *See Eitel v. Stoll, Keenon, Ogden PLLC*, No. 3:23-CV-00398-GNS, 2025 WL 1594287, at *4 (W.D. Ky. June 5, 2025) (finding a report written after summary judgment was not newly discovered evidence because the information contained in the report was previously available).

Powers provides two primary justifications for not deposing Peterson earlier. [*Id.*]. First, Powers argues that he did not have time to take Peterson's depositions during the discovery period because Peterson was not listed as a person with discoverable information in AutoZone's initial disclosures. [DE 111 at 2217]. However, Peterson's initial statement, as well as AutoZone's investigative statement concerning that incident, were provided in AutoZone's initial disclosures, which provided more than enough to show that Peterson had discoverable information. [FPTC Transcript at 9]. Powers's counsel demonstrate Peterson's importance and

10

possession of discoverable evidence when he sought Peterson out to obtain an affidavit and recorded calls with Peterson.

Second, Powers's counsel argues that the birth of his son in July of 2024, and eight weeks of significant health issues afterward, prevented him from deposing Peterson during discovery. [DE 2217]. While the court is sympathetic to these arguments, Powers has already raised these exact issues at the appropriate time during the discovery period. [DE 21]. As a result, Powers was granted an extension to the discovery period from October 4, 2024, to November 27, 2024, an extension of eight weeks, which Powers's counsel states was the length of the health challenges raised here. [DE 25 this 155]. Powers acknowledges that during this extension he was able to meet with Peterson to take his affidavit and notify AutoZone during the discovery period but has no explanation for why Peterson was the only deposition parties were unable to take.

Powers also argues that he exercised due diligence in obtaining Peterson's deposition. However, Powers was not the party who sought the deposition of Peterson. It was AutoZone who eventually moved for the belated deposition, and Powers who initially resisted taking the deposition. Powers further claims that he exercised due diligence by providing AutoZone with Peterson's affidavit during the discovery window but fails to mention in his motion what he acknowledged during the final pre-trial conference, that AutoZone received the affidavit on the last day of the discovery period. [FPTC Transcript at 9]. And even though Powers did initially agree to an extension of discovery with AutoZone to take the deposition of Peterson, Powers later declined to abide by the agreement, and the deposition of Peterson was only taken after a conference and order from the Magistrate Judge. [DE 41]. Powers has failed to demonstrate due diligence under Fed. R. Civ. P. 54(b) as he did not take any steps to obtain the deposition of Peterson and at one point actively declined to take his deposition until a court order.

11

The law is clear that "granting a motion to reconsider is 'extraordinary' relief and that such motions are 'seldom granted.'" *United States v. Thompson*, 580 F. Supp. 3d 503, 506 (N.D. Ohio 2022) (quoting *Amin v. Konteh*, No. 3:05-CV-2303, 2008 WL 5111091, at *2 (N.D. Ohio Dec. 1, 2008)). The Court finds no extraordinary circumstances warranting relief here. Powers, much like AutoZone, had plenty of time and opportunity to obtain Peterson's deposition before the Court's order denying summary judgment, and before the filing of his first motion to reconsider. As the Court ruled previously at DE 86, Peterson's evidence is not newly discovered as Peterson was known and deposable long before either party took the steps to depose him. This evidence was not previously unavailable, and Powers failed to exercise due diligence in obtaining it. Nothing has been presented that alters the Courts' previous rulings and Powers's motion to reconsider based on newly discovered evidence is **DENIED**.

### III.   CONCLUSION

Having considered the Plaintiff's motion and the applicable law, and being otherwise sufficiently advised, it is **ORDERED** that Powers's Second Motion to Reconsider [DE 111] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

August 27, 2025